**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VASCEPA ANTITRUST LITIGATION INDIRECT PURCHASER PLAINTIFFS | Civil Action No. 21-12061 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Amarin Pharma, Inc., Amarin Pharmaceuticals Ireland Limited, and Amarin Corporation plc (collectively, "Amarin").  (ECF No. 64.)  The Motion is opposed by Plaintiffs Welfare Plan of The International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R; Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund; Uniformed Fire Officers Association Family Protection Plan Local 854; Uniformed Fire Officers Association for Retired Fire Officers Family Protection Plan; Teamsters Health & Welfare Fund of Philadelphia and Vicinity; and Plaintiff Board of Trustees of the Heavy and General Laborers' Local Unions 472 and 172 of NJ Welfare Fund, individually on behalf of themselves and as a class action on behalf of all others similarly situated ("Indirect Purchaser Plaintiffs" or "IPPs"). ("Opp.", ECF No. 71.)  Amarin filed a reply.  ("Reply", ECF No. 73.)  On September 27, 2022, the Court held oral argument.

The Court has carefully considered the parties' submissions and the positions they presented at oral argument.  For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART the Motion to Dismiss.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The Court writes primarily for the parties.  It therefore confines the summary of the facts to those relevant to the Motion.

As alleged in the Consolidated Complaint, Amarin markets a drug product containing "EPA," a highly purified omega-3 fatty acid administered for the reduction of both triglycerides and cardiovascular risk.  (Consolidated Complaint, hereinafter "CC" ¶¶ 70, 73, ECF No. 53.) Amarin's drug product has been marketed under the name "Vascepa" since 2012.  (*Id*.)  Various generic manufacturers sought FDA approval to sell a generic EPA product, and patent litigation ensued.  (*Id*. ¶ 91–94, 96.)  Following resolution of the litigation and the requisite regulatory approvals, at least two generic manufacturers—Hikma Pharmaceuticals ("Hikma") and Doctor Reddy's Laboratories ("DRL")—were in a position to launch a generic EPA product.  (*Id*. ¶ 106.)

In the meantime, Amarin negotiated exclusive supply agreements with suppliers of EPA with an FDA-approvable manufacturing process and sufficient ready capacity to support a commercial launch.  (*Id*. ¶ 111–118.)  According to the Consolidated Complaint, Amarin made various public statements indicating that this was done to hamper generic entry.  (*Id*. ¶ 116–119, 121.)  Amarin's tactic succeeded because it impaired Hikma's ability to obtain enough EPA for a full generic launch.  (*Id*. ¶ 141–144.)  It also delayed DRL's generic launch by ten months.  (*Id*. ¶ 145.)  This prevented price competition for brand and generic Vascepa.  (*Id*. ¶ 177.)

IPPs bring this suit on behalf of a nationwide class of "all persons or entities . . . who indirectly purchased, paid and/or provided reimbursement" for generic and/or brand Vascepa, beginning from August 7, 2020.  (*Id*. ¶ 179.)  The Consolidated Complaint asserts federal and state causes of action set forth in the table below.

| FEDERAL CLAIMS | STATE CLAIMS |
|---|---|
| Count 1: Violation of 15 U.S.C. § 1 by Conspiracy in Restraint of Trade | Count 4: Monopolization |
| Count 2: Violation of 15 U.S.C. § 2 by Unlawful Monopolization | Count 5: Conspiracy to Restrain Trade |
| Count 3: Declaratory and Injunctive Relief under Sherman Act § 2 | Count 6: Violation of State Consumer Protection Laws |
| | Count 7: Unjust Enrichment |

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented*." Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).   "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"   *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).   In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   "[M]ere restatements of the elements of [a] claim[] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted).   Finally, the court must determine whether "the facts alleged in the

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  On the whole, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citation omitted).

## III.  DISCUSSION

### A.  JURISDICTION

The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 1, 2, 15, and 26, as well as 28 U.S.C. §§ 1331, 1332 (a) and (d), and 1337.

### B.  FEDERAL CLAIMS: ANTITRUST

As Amarin's Moving Brief concedes, IPPs' federal antitrust claims stand or fall with the same federal antitrust claims brought by Dr. Reddy's Labs against Amarin in the related case 21-cv-10309.  (Moving Br. at 4.)  There, Amarin moved to dismiss the plaintiff's antitrust claims on the same bases they invoke here.  (21-cv-10309, ECF No. 49.)  The Court denied that portion of Amarin's motion in an oral decision issued on November 28, 2022.  (ECF No. 95.)  For the same reasons articulated in that decision, the Court will also deny the portion of Amarin's Motion in this case seeking to dismiss IPPs' federal antitrust claims.

### C.  STATE LAW CLAIMS

#### 1.  IPPs' Standing for State Law Claims in General: Amarin's Challenge is Premature

In its Motion, Amarin argues that IPPs lack standing to bring claims under the laws of jurisdictions in which the named plaintiffs do not reside and no injuries are alleged to have occurred.  (Moving Br. at 26–29.)  For their part, IPPs insist that they have Article III standing and that the Motion actually challenges whether Named Plaintiffs can represent absent class members—a question to be addressed in the Rule 23 class certification analysis, not on a motion to dismiss. (Opp. 22–26.)

4

Generally, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition").    The Court acknowledges a diversity of opinion among the courts regarding whether, prior to class certification, named plaintiffs must demonstrate that they have standing to assert all claims in the class action complaint "or whether it is sufficient to establish standing for a single claim because a court will determine if the named plaintiffs have standing to represent the unnamed class members seeking redress under the balance of asserted claims during the class certification process[.]" *McGuire v. BMW of N. Am., LLC*, Civ. No. 13-7356, 2014 WL 2566132, at *5 (D.N.J. June 6, 2014) (quoting *In Re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL 5008090, at *8 (D.N.J. Oct. 20, 2011)).

Here, IPPs bring claims for violations of state antitrust and consumer protection laws, as well as unjust enrichment on behalf of themselves and a nationwide class of:

> [a]ll persons or entities in the United States and its territories who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for generic and/or brand Vascepa from Amarin, Hikma, Dr. Reddy's Laboratories, or any other manufacturer of a generic version of Vascepa or any agents, predecessors, or successors thereof, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, during the period from August 7, 2020 through and until the anticompetitive effects of the defendants' unlawful conduct cease.

(CC ¶ 179.)

A series of courts have concluded that "the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they [were injured] is immaterial" because "[t]he issue . . .  is one of predominance[—]whether questions of law or fact common to class members predominate over any questions affecting only individual members."  *See, e.g., Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) (citing Fed. R. Civ. P. 23 (b)(3) ).  This view is consistent with the Supreme Court's guidance that "[w]hile an Article III court ordinarily must be sure of its own jurisdiction before getting to the merits, a Rule 23 question should be treated first because class certification issues are 'logically antecedent' to Article III concerns."  *Ortiz v. Vibreboard Corp.*, 572 U.S. 815, 816 (1999).

Here, the question of whether IPPs have standing to bring claims for violations of laws of other states on behalf of absent members only arises if the Court certifies the nationwide class. The Court therefore defers its consideration of this issue because it is more appropriate for the class certification analysis.  Accordingly, the Court sets aside as premature Amarin's arguments for dismissal of state claims based on Named Plaintiffs' lack of standing in certain jurisdictions.

       2.    State Law Antitrust Claims

            a)    IPPs' Nexus for Certain State Law Antitrust Claims: Amarin's Challenge is Premature

The Consolidated Complaint asserts claims for antitrust violations under the law of 27 states and the District of Columbia.  (CC ¶ 227.)  Amarin moves to dismiss IPPs' state antitrust claims from seven jurisdictions—Connecticut, District of Columbia, Maryland, Mississippi, South Dakota, Tennessee, and West Virginia—because IPPs do not plead a specific nexus as required by the antitrust statutes of the respective jurisdictions.  (Moving Br. at 35–37.)

IPPs point to a series of paragraphs in their Consolidated Complaint to argue that their pleading is adequate because it alleges a nationwide scheme that caused substantial effects within each state and that class members purchased Vascepa at elevated prices in each state. (Opp. at 35) (citing CC ¶ 10, 21–23, 176, 224, 233, 239, 257–8.)

The Court has reviewed the Consolidated Complaint.  It alleges, as IPPs assert, a nationwide scheme.  The purported scheme has both interstate and intrastate effects.  For example, as part of their claim alleging monopolization under state law (Count 4), IPPs allege that "Amarin's competitive conduct directly impacts and disrupts commerce within the jurisdictions below" (CC ¶ 224), and IPPs proceed to identify the relevant jurisdictions (CC ¶ 227).  They plead restraint of trade under state law (Count 5) in similar fashion.  (CC ¶¶ 232–3, 236).  The Court agrees with IPPs that, at this stage of the litigation, their allegations of a broad nationwide scheme to maintain the price of Vascepa at a supra-competitive level, and the effects it had on consumers within the seven challenged states, are enough to satisfy the intrastate pleading requirements.  *See In re Generic Pharm.*, 368 F. Supp. 3d 814, 837 (E.D.P.A. 2019); *In re Liquid Aluminum Sulfate*, Civ. No. 2017, WL 3131977, at *24–25 (D.N.J. July 20, 2017). Whether IPPs will ultimately establish facts sufficient to prove each of their state antitrust claims is a question that remains to be addressed later in this litigation.

      b)     Indirect Plaintiffs Have Standing to Pursue an Illinois State Class Action Antitrust Suit

Amarin specifically seeks to dismiss IPPs' Illinois state antitrust claim on the basis that they lack standing under Illinois state law.[1]

---

[1] Amarin initially argued that IPPs' claim in New Hampshire was also barred by its antitrust statute, N.H. Rev. Stat. § 356:11, but Amarin withdrew its position on reply after IPPs' opposition observed that the statute was amended to permit such suits after 2008.  Reply at 17 n.11.  *See also In re Xyrem Antitrust Litigation*, 555 F. Supp. 3d 829, 885 (N.D. Cal. 2021) (noting amendment to New Hampshire statute.)

Section 7(2) of the Illinois Antitrust Act authorizes antitrust suits by indirect purchasers, but bars class action suits brought by anyone other than the Illinois Attorney General: "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection."  740 Ill. Com. Stat. Ann. 10/7 (2010).

Given the often-nationwide nature of antitrust litigation, district courts across the country have wrestled with whether the Illinois statute's limitation on indirect purchaser class action suits also bars such suits in federal court.[2]  No circuit court has considered this issue, and there is a split among the district courts.  The question implicates *Erie* doctrine principles, and more particularly, the U.S. Supreme Court's fractured decision in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

In *Shady Grove*, the Supreme Court addressed whether a New York class action bar conflicted with Rule 23 and, if so, whether the federal rule or the state rule applied.  The Supreme Court held that Rule 23—not the New York class action bar—applied in federal court. *Id.*  No majority opinion was issued.  Justice Scalia delivered a plurality decision that began and ended with an assessment of Rule 23, reasoning that properly enacted federal rules of procedure always apply in federal court. *Id.* at 410.  Justice Stevens's concurring opinion introduced an additional nuance, taking the position that properly enacted federal rules generally apply in federal court, unless the federal rule "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

---

[2] The parties' briefing cites a series of cases and states their respective preferred outcomes, but offers no analyses.

At least one court of appeals has concluded that Justice Stevens's opinion should control because it provides the narrowest grounds for the Supreme Court's decision.  *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) (following Stevens).  In contrast, the Seventh Circuit—home to Illinois—appears to have embraced Justice Scalia's opinion.  *See Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir. 2011) (*Shady Grove* "holds that Rule 23 applies to all federal civil suits, even if that prevents achieving some other objective that a court thinks valuable"); *State Farm Life Ins. Co. v. Jonas*, 775 F.3d 867, 869 (7th Cir. 2014) ("[F]ederal procedures govern in federal litigation[.]") (citing *Shady Grove*, 559 U.S. 393).

Here in the Third Circuit things are a little less clear.  The Court of Appeals has applied both the Scalia and the Stevens frameworks in one decision, *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 265 (3d Cir. 2012), but in two decisions—one issued before and one issued after *Knepper*— it has relied upon Justice Scalia's plurality position, *see Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 91, 91 n.27 (3d Cir. 2011) ("we agree with Justice Scalia" and "under *Shady Grove* [], federal law regarding class actions would be applied in federal courts, not state law") and *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012) ("a plurality of the Court stated that the [] inquiry does not depend on the 'substantive or procedural nature or purpose of the affected state law,' but rather 'substantive or procedural nature of the Federal Rule.") (citing *Shady Grove* and *Knepper*).  The Court is mindful that none of these decisions from the Court of Appeals conducts an analysis for fractured Supreme Court opinions consistent with the Supreme Court's own policy in *Marks v. United States*, 430 U.S. 188 (1977) and acknowledged by the Third Circuit, *see, e.g., Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009).  In the absence of such an

analysis, however, and in an earnest effort to divine the Court of Appeals' view, the Court has reviewed *Knepper, Landsman, and Nuveen* and concludes that the Court of Appeals has demonstrated its preference for the reasoning of the Scalia plurality.  It is likewise persuasive that former Chief Judge Linares of this District referred to the plurality rather than the concurrence when citing *Shady Grove* in *In re Liquid Aluminum Sulfate Antitrust Litig.*, MDL No. 16-2687, 2017 WL 3131977, at *25 (D.N.J. July 20, 2017) (denying motion to dismiss Illinois antitrust claims, albeit ones brought by individual indirect purchasers rather than a class).  Therefore, following Justice Scalia's plurality in *Shady Grove*, this Court joins those district courts that have found that Rule 23, as a properly enacted federal procedural rule, controls the availability of the class action mechanism in federal court, not Section 7(2) of the Illinois Antitrust Act.  The portion of Amarin's motion seeking to dismiss IPP's Illinois state antitrust claims based on the contrary position will thus be DENIED.[3] [4]

### 3.    State Law Consumer Protection Claims

Count Six of the Consolidated Complaint asserts violations of state unfair competition and consumer protection laws in 24 jurisdictions.  Amarin challenges IPPs standing as consumers within the meaning of several of these jurisdictions.  (Moving Br. at 39–41.)  It also disputes the adequacy of the Consolidated Complaint's pleadings with respect to several state

---

[3] The Court notes that it would reach the same conclusion by applying the Stevens concurrence because the limitation on indirect purchaser class action suits imposed by the Illinois Antitrust Statute does not deprive indirect purchasers of their rights; it merely forecloses one route for pursuing their claims.  Illinois indirect purchasers retain the right to pursue individual suits or petition their state Attorney General to sue on their collective behalf.  Accordingly, the statute does not "define the scope of the state-created right" and should not preempt Rule 23.

[4] The Court would also favor Rule 23 over the Illinois Antitrust Statute based on an entirely separate and independent theory not raised by the parties but that was recently observed elsewhere in this Circuit: application of the plain meaning of the statute itself.  By its own terms, Section 7(2) prohibits class action suits brought by indirect purchasers only "in any court of this State," *i.e.*, Illinois state courts.  *See In re Seroquel XR Antitrust Litigation*, Civ. No. 20-1076, 2022 WL 2438934, at *17–19 (D. Del. July 4, 2022) (Connolly, Ch. J.) (finding Illinois Antitrust Statute's literal intrastate limitation persuasive, although this was based in part on the defendant's failure to brief the issue).  Giving effect to Section 7(2) outside of Illinois arguably ignores its literal terms.  It can be reasonably inferred that, had the Illinois legislature sought to completely bar such suits under its statute in *any* jurisdiction, it could have omitted "of this State" from the language of Section 7(2).

statutes that require an unconscionable, unfair, or deceptive act and consumer reliance on that act.  (*Id*. at 43–46).

        (1)       Whether IPPs Have Standing to Raise Consumer Claims in Challenged States

Amarin disputes IPPs' ability to pursue consumer protection claims in nine of the jurisdictions:  the District of Columbia, Hawaii, Massachusetts, Minnesota, Missouri, Montana, Oregon, Rhode Island, and Vermont.  Given the idiosyncrasies in their respective statutes, the Court considers several, but not all, of these jurisdiction separately.

*(a)*    *District of Columbia*

Amarin challenges IPPs' status as a "consumer" under the District of Columbia consumer protection law, but the Court does not reach this challenge because in IPPs' opposition to the Motion, they separately assert standing to raise their consumer protection claims as non-profit organizations under D.C. Code § 28-3905(k)(1)(A)(C).  (Opp. at 21.)  Amarin neglects to contest this point on Reply.

D.C. Code § 28-3905(k)(1)(A)(C) indeed authorizes suits by "[a] nonprofit organization [], on behalf of itself or any of its members . . . [to] bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased . . . ."  The Consolidated Complaint clearly asserts IPPs' status as non-profits.  (CC ¶¶ 11–16, 251.  Accordingly, the Court concludes that IPPs have standing to bring their consumer protection suits in the District of Columbia.  *See Remicade*, 345 F. Supp. 3d at 588.

*(b)*    *Hawaii*

Based on the parties' briefing, there appears to be agreement that Named Plaintiffs, as insurers, may not bring a claim for "unfair or deceptive acts or practices" insofar as Hawaii bars

such claims by persons "other than a consumer, the attorney general or the director of the office of consumer protection" Hawaii Rev. Stat. § 480-2(d), and the statute limits a "consumer" to a "natural person" *id*. at § 480-1.   As IPPs point out, however, their proposed class includes individuals who are natural persons, and this issue is therefore better left for resolution at the class certification stage.  (Moving Br. at 30.)  The Court agrees.

It is likewise clear that Named Plaintiffs may bring a claim for "unfair methods of competition" in Hawaii because its statute authorizes these claims more broadly to be brought by "any person," including the various entities currently proceeding as Named Plaintiffs in this case.[5] *Id*. at ¶480-2(e).

For these reasons, the Court will DENY the portion of the Motion seeking to dismiss IPPs' Hawaii state consumer protection claims.

### (c)      Massachusetts

Amarin argues that IPPs, as "health fund plaintiffs," rather than "consumers," cannot maintain a consumer protection claim under Massachusetts law.  (Moving Br. at 40) (citing *In re Asacol Antitrust Litig.*, Civ. No. 15-12730, 2016 WL 40833333, at *13 (D. Mass. July 20, 2016)).  IPPs maintain that they can bring their claims as either "consumer claims" or "business claims."  (Opp. at 30–21) (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 80 (D. Mass. 2007) ("AWP I")).

Section 11 of Mass. Gen. L. c. 93A provides a cause of action for unfair practices to "[a]ny person who engages in the conduct of any trade or commerce," while § 9 provides the right to "[a]ny person, other than a person entitled to bring action under section eleven." Mass.

---

[5] "'Person' or 'persons' includes individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations, existing under or authorized by the laws of this State, or any other state, or any foreign country." Hawaii Rev. Stat. § 480-1.

Gen. L. c. 93A §§ 9, 11.  Massachusetts thus distinguishes between "consumer claims" (brought under § 9) and "business claims" (brought under § 11).

In *Asacol*, "health fund plaintiffs"—akin to the named plaintiff union funds in this case— filed an antitrust class action suit against brand and generic pharmaceutical companies, alleging that the brand's product hopping scheme, together with a reverse payment agreement between the brand and the generic companies, violated state laws against monopolization and restraint of trade.  *Asacol*, 2016 WL 408333, at *1.  On a motion to dismiss, the Massachusetts district court concluded first that the health fund plaintiffs could not bring a claim under § 9 because "they cannot show that they undertook the relevant transactions 'for purely personal reasons (such as the purchase of an item for personal use).'"  *Id*. at 2016 WL 4083333, at *13 (citing *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 821 (2004)).  It next concluded that § 11 and the antitrust claims the health fund plaintiffs were attempting to assert were "mutually exclusive."  *Id*.  In reaching the latter conclusion, the district court distinguished *In re Pharmaceutical Industrial Average Wholesale Price Litig.*, 582 F.3d 156, 192 (1st Cir. 2009) ("*AWP II*") on the basis that the claims that the First Circuit permitted to proceed in *AWP II* under § 11 were misrepresentation claims rather than antitrust claims.

Here, the Court finds *Asacol* persuasive in its distinction between Massachusetts consumer protection claims sounding in misrepresentation (permissible) and Massachusetts claims sounding in antitrust (impermissible).  While IPPs clearly allege antitrust violations, they also allege, if to a lesser degree, that Amarin also made certain misrepresentations to the public and to its investors (CC ¶¶ 125, 133–137), and withheld material facts and information from the Named Plaintiffs and class members to their detriment (CC ¶¶ 238, 245–248.)  The Court will

therefore DENY the portion of Amarin's Motion that seeks to dismiss IPPs' claim for violation of the Massachusetts state consumer protection laws.

### (d)     Minnesota

Amarin cites two district of Minnesota decisions in support of dismissal of IPPs' Minnesota state consumer protection claim:  *Marvin Lumber & Cedar Co. v. Sapa Extrusions, Inc*., 964 F. Supp. 2d 993, 1009 (D. Minn. 2013) and *Solvay Pharms., Inc. v. Global Pharms.*, 298 F. Supp.  880, 886 (D. Minn. 2004).  For the reasons set forth below, the Court finds neither decision persuasive.

Minnesota authorizes private suits for violations of its consumer protection laws by "any person."  Minn. Stat. Ann. § 8.31 subd. 3a.  The Minnesota Supreme Court has observed that "the naturally broad interpretation of 'any person' is consistent with the overall tenor of the statutes at issue to maximize the tools available to stop the prohibited conduct."  *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 9 (Minn. 2001).  With respect to the health insurer plaintiffs at issue in that case, the court also specifically held that "HMOs need not be actual purchasers of the . . . products in order to properly plead claims" under Minnesota law.  *Id.* at 11.

Against this backdrop, and given the facts of the current case, the *Solvay Pharms.* and *Marvin Lumber* decisions cited by Amarin are not persuasive.  In *Solvay Pharms.*, a Minnesota district court dismissed a plaintiff's claims because it concluded the plaintiff was a merchant that must pursue relief under the Uniform Commercial Code rather than consumer protection laws.  *Solvay Pharms*. distinguished *Group Health* on the basis that Solvay, as a pharmaceutical manufacturer, "does not hold the same interest in consumer health and protection as a large health insurance company."  298 F.Supp.2d at 887.  In *Marvin Lumber*, the district court dismissed a plaintiff window manufacturer's state consumer protection claims, relying in part on

*Solvay Pharms* to conclude that the plaintiff was also a merchant rather than a consumer.  964 F.Supp.2d at 1009.

Here, Named Plaintiffs are non-profit Taft-Hartley Funds (CC ¶¶ 11–16) bringing suit on behalf of a class of plaintiffs "who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for generic and/or brand Vascepa" (CC ¶¶179).  The Court therefore finds that Named Plaintiffs are akin in both form and function to the HMO plaintiffs expressly authorized by the Minnesota Supreme Court in *Group Health* to bring suit under Minnesota law.  Accordingly, the portion of Amarin's Motion seeking to dismiss these claims will be DENIED.

> (e)    *Missouri, Montana, Oregon, Rhode Island & Vermont*

Amarin seeks dismissal of IPPs' Missouri, Montana, Oregon, Rhode Island, and Vermont claims under an identical theory:  that IPPs do not qualify as the "consumers" or protected "persons" required under each of the state's laws.  (Moving Br. 40, 41.)  The considerations for these jurisdiction are sufficiently similar that, having reviewed the authority submitted by the parties, the Court agrees with IPPs and finds that the Consolidated Complaint pleads sufficient standing as either consumers or protected persons for IPPs to bring their state consumer protection claims in these jurisdictions.  *See In re Ranbaxy Gen. Drug Application Antitrust Litig.*, MDL No. 19-2878, 2019 WL 6341298, at *8 (D. Mass. Nov. 27, 2019) (finding standing in Missouri and Vermont); *Staley v. Gilead Sciences, Inc.*, 446 F.Supp.3d 578, 639–641 (N.D. Cal. 2020) (finding standing in Missouri, Montana, and Rhode Island); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d. 814, 847 (finding standing in Montana, Rhode Island, and Vermont); and *Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*, Civ. No. 13-1883, 2015 WL 4506401, at *15–16 (D. Or. July 22, 2015) (finding

standing in Oregon).   Accordingly, the portion of Amarin's motion seeking to dismiss these claims will be DENIED.

> (2)    Whether the Consolidated Complaint Adequately Pleads an Unconscionable, Unfair, and/or Deceptive Conduct in Challenged States

Amarin separately disputes the sufficiency of the Consolidated Complaint's pleadings as to an unconscionable, unfair, or deceptive act and consumer reliance on that act because it argues that these elements are required in twelve states:  Arizona, Michigan, Minnesota, Nevada, New Mexico, New York, Oregon, Rhode Island, South Dakota, Tennessee, Utah, and West Virginia.

> (a)    *Arizona, Nevada, Rhode Island, Utah, and West Virginia*

In nearly half of the disputed states—Arizona, Nevada, Rhode Island, Utah, and West Virginia—consumer protection statutes are co-extensive with antitrust violations of the kind pled by the Consolidated Complaint.  *See In re Interior Molded Doors Antitrust Litig.*, Civ. No. 18-718, 2019 WL 4478734, at *19) (E.D. Va. Sept. 18, 2019) (noting FTC-harmonization amendment to Ariz. Rev. Stat. § 44-1522(C) in 2013); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080 (S.D. Cal. 2017) (denying motion to dismiss because antitrust conspiracy sufficed to plead violation of Nevada Deceptive Trade Practices Act); *In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *28–29 (holding that Sherman Action violations supported by allegations of price fixing and unscrupulous conduct that caused injury to Rhode Island consumers sufficed to state a claim under Rhode Island Unfair Trade Practices and Consumer Protection Act); *In re Namenda Indirect Purchaser Antitrust Litig.*, Civ. No. 15-6549, 2021 WL 2403727, at *33 (S.D.N.Y. June 11, 2021) (denying dismissal of Utah claims and observing that "federal courts that have evaluated Utah's [Consumer Sales Practices Act] statute in the antitrust context have all permitted such claims to proceed, construing the statute liberally

to conclude that an antitrust violation can be unconscionable"); *Packaged Seafood*, 242 F. Supp. 3d at 1087 (denying dismissal of West Virginia claims and observing that the West Virginia Legislature's FTC-harmonization amendment to the West Virginia Consumer Credit and Protection Act in 2015 altered the analysis previously done in the two cases cited by Amarin for dismissal); *Id*. at 1083–4).  Insofar as the Court has already found that IPPs have plausibly pled claims for federal antitrust violations, including price fixing, it further finds that IPPs have sufficiently articulated state unfair competition claims in Arizona, Rhode Island, Michigan, Nevada, Utah, and West Virginia.

       (b)    *Michigan, Minnesota, New Mexico, New York, Oregon, South Dakota, and Tennessee*

In the remaining, disputed states, the consumer protection statutes require more than merely a well-pled antitrust violation.

Amarin highlights that Michigan, Minnesota, New York, Oregon, and South Dakota require deception over and above anticompetitive conduct.  Amarin appears to ignore that the Consolidated Complaint alleges it deceived the public, its investors, and consumers by both misrepresentation and/or by withholding material information.  (CC ¶ 245.)  The Court therefore finds that IPPs have met the thresholds for Michigan, Minnesota, New York, Oregon, and South Dakota.  *See Generic Pharm.*, 368 F. Supp. 3d at 845–6 (concluding that end payor plaintiff's comparable price fixing conspiracy "maintained through deception," during which the defendants misled consumers and the public that their prices were competitive, met the deceptive and/or unconscionable conduct pleading requirements for Michigan, Minnesota, New York, and Oregon state claims); *Packaged Seafood*, 242 F. Supp. 3d at 1083–4 (denying dismissal of Oregon state claims because they "plausibly allege affirmative misrepresentations regarding and concealment of the alleged conspiracy.").

As Amarin notes, New Mexico state consumer protection laws prohibit unconscionable trade practices only under certain circumstances.  Among them are practices that "result[] in a gross disparity between the value received by a person and the price paid."  New Mexico Stat. Ann. § 57-1202(D), (E).  The Consolidated Complaint does allege that "[t]here was and is a gross disparity between the price that the plaintiffs and class members paid for Vascepa and the value they received, given that a less expensive generic equivalent should been available."  (CC ¶ 253.)  In prior paragraphs, the Consolidated Complaint describes the powerful downward effect on pricing exerted by generic market entry.  (CC ¶ 61–69.)  The Court therefore finds that IPPs have pled a plausible claim for violation of New Mexico state consumer protection laws.

Finally, Amarin challenges the IPPs' claims under the Tennessee Consumer Protection Act ("TCPA") on the basis that Tennessee does not permit suits under the statute based on anticompetitive conduct (such suits are separately authorized under the Tennessee Trade Practices Act).  Indirectly, the parties offer contradictory decisions from the Court of Appeals of Tennessee.  IPPs cite *Blake v. Abbott Labs, Inc.*, Civ. No. 03A01-9509-00307, 1996 WL 134947 (Tenn. Ct. App. April 24, 1996).  Amarin cites to *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409 (E.D.P.A. 2009) which relies heavily on *Sherwood v. Microsoft Corp.*, Civ. No. M2000-01850-COA-R9, 2003 WL 21780975 (Tenn. Ct. App. July 31, 2003).[6]  In each case, the Tennessee court of appeals reversed the lower court's decision regarding a motion to dismiss a claim brought under the TCPA.  Of the two decisions, *Sherwood* (and by extension *Flonase*) is the better reasoned.  The *Sherwood* court traced the history of Tennessee's development of consumer protection laws, parsed the language of the TCPA itself, and carefully analyzed the substance of the anticompetitive claims asserted, as well as the claims alleging some

---

[6] In its *Flonase* decision, the Eastern District of Pennsylvania court does not cite or acknowledge the earlier *Blake* decision.  In *Sherwood*, the Tennessee Court of Appeals acknowledges, then explicitly departs from its prior *Blake* decision.

misrepresentations made by the defendant.  Based on its reading of the entirety of the complaint in that case, the *Sherwood* count concluded that the alleged misrepresentations were merely "related to" or "an alleged consequence of" the antitrust violation allegations, or fatally conclusory.

Here, applying the same discriminating standard applied by the Tennessee Court of Appeals in *Sherwood*, the Court finds that the deception claims alleged in the Consolidated Complaint would be barred by the TCPA because, by Tennessee standards, they would be deemed related to, or a consequence of, IPPs' anticompetitive allegations.  Accordingly, the Court will GRANT the portion of Amarin's Motion seeking to dismiss IPPs' Tennessee Consumer Protection Act claims and will dismiss them without prejudice.[7]

### 4.      State Law Unjust Enrichment Claims

Amarin first contends that IPPs unjust enrichment claims are deficient because they do not plead anticompetitive conduct in violation of the antitrust laws.  This is the same challenge it waged against IPPs' antitrust claims.  For the same reasons articulated above, the Court rejects Amarin's identical position regarding IPPs' unjust enrichment claims.

### a)      Whether *Illinois Brick* Bars Unjust Enrichment Claims in Certain Jurisdictions

Amarin also seeks dismissal of IPPs' unjust enrichment claims in jurisdictions that have not repealed *Illinois Brick* to permit either antitrust or consumer protection claims by indirect purchasers.  Amarin's theory is that permitting unjust enrichment claims in these jurisdictions to go forward would be tantamount to circumventing the wishes of the legislatures in these 22 jurisdictions:  Alaska, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky,

---

[7] Insofar as the TCPA claims will be dismissed without prejudice and IPPs may seek to replead them, the Court pauses to acknowledge Amarin's argument that the TCPA claims should also be dismissed because Tennessee state law prohibits class actions under the TCPA.  (Moving Br. at 46.)  The Court rejects Amarin's position because, as already held above with respect to Illinois antitrust claims, Rule 23 determines availability of the class action mechanism in federal court rather than state law.

Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, South Carolina, Texas, Virginia, Washington, Wyoming, and Puerto Rico.[8]  (Moving Br. at 48–49.)  Amarin asserts that the majority of courts in this Circuit have dismissed indirect purchasers' unjust enrichment claims for this reason.  (*Id.*) (citing *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 (E.D. Pa. 2014); *Sheet Metal Workers*, 737 F. Supp. 2d at 426; *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010)).

IPPs cite *Generic Pharms.* as the sole authority from within this Circuit for the directly contradictory proposition:  "in the absence of authority from state courts precluding the common law cause of action, it is incorrect to assume that any state prevents an unjust enrichment claim."  (Opp. at 50) (citing 368 F. Supp. 3d at 849–850).   Second, they distinguish *Illinois Brick*'s holding with respect to antitrust claims from the unjust enrichment claims at issue.   In the alternative, IPPs submit a chart of authority in support of their unjust enrichment claims in the individual disputed jurisdictions.

As a first matter, for the reasons capably articulated by the Pennsylvania district court in *Niaspan*, this Court joins the "vast majority of courts" (including the majority in this Circuit) that have held that "indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under the state's antitrust and consumer-protection statutes, absent a showing that the common law of the state in question expressly allows for such recovery."  *Niaspan*, 42 F. Supp. 3d at 763.  To that end, the Court has reviewed the authority provided by IPPs.

---

[8] Amarin's Moving Brief actually seeks dismissal of IPPs' unjust enrichment claims on this basis in 23 jurisdictions, including their claim under New Hampshire law.  Amarin withdrew its challenge to IPPs' New Hampshire state antitrust claim (Reply at 17 n.11.) but neglected to withdraw its challenge to the corresponding unjust enrichment claim.  The Court infers this was an oversight and deems the latter challenge withdrawn.

(1)     Montana

With respect to their Montana unjust enrichment claim, IPPs cite *Olson v. Microsoft*, Civ.

No. 2000-219, 2001 WL 36083237 (D. Mont. Feb. 15, 2001).  In that case, a District of Montana

court expressly held that *Illinois Brick* does not apply to Montana's Uniform Trade Practices Act

based on the plain language of the statute itself.  *Id*.  The court therefore denied a defendant's

motion to dismiss an indirect plaintiff's state antitrust claim.  *Id*.  Amarin does not distinguish

*Olson* or provide contrary authority on Reply.  Insofar as the Court finds *Olson* persuasive and it

indicates that Montana common law expressly allows such claims, the Court will DENY this

portion of Amarin's Motion.

(2)     Puerto Rico

The Court reaches a similar conclusion with respect to Puerto Rico, for which IPPs cite

*Rivera-Muniz v. Horizon Lines Inc*.  The district court in that case concluded that the Puerto Rico

Supreme Court had explicitly rejected *Illinois Brick*'s restriction on indirect purchaser standing

for suits in the territory.  737 F. Supp. 2d 57, 61 (D.P.R. 2010) (citing *Pressure Vessels of P.R. v.

Empire Gas de P.R.*, 137 D.P.R. 497, 518–20 (1994)).  Amarin does not distinguish *Rivera-

Muniz* or *Pressure Vessels* or provide contrary authority on Reply.  Based on these cases, the

Court will DENY this portion of Amarin's Motion.

(3)     Other Disputed Jurisdictions

For the remaining jurisdictions—Alaska, Colorado, Delaware, Florida, Georgia, Idaho,

Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, New Jersey, Oklahoma,

Pennsylvania, South Carolina, Texas, Virginia, Washington, and Wyoming—although IPPs do

submit authority, the Court finds that the cases provided do not specifically address whether the

common law of the jurisdiction expressly allows for recovery by an indirect purchaser under

either an antitrust or consumer protection theory.  Some cases expressed the general opinion

(already rejected by this Court) that unjust enrichment claims are permissible in states that continue to follow *Illinois Brick*, other cases addressed whether the indirect purchaser plaintiffs at issue adequately pled an unjust enrichment claim, and other cases considered whether unjust enrichment could be pled in parallel with legal claims in jurisdictions permitted legal claims.  For this reason, the Court will GRANT the portion of Amarin's Motion seeking to dismiss the unjust enrichment claims brought by IPPs in Alaska, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, New Jersey, Oklahoma, Pennsylvania, South Carolina, Texas, Virginia, Washington, and Wyoming.  These claims will be dismissed without prejudice.

b)  Standalone Unjust Enrichment Claims are Permissible

Over and above the jurisdictions where Amarin moves to dismiss claims inconsistent with *Illinois Brick*, it also seeks to dismiss IPPs' unjust enrichment claims in Alabama and Arkansas.  In those states, IPPs have not alleged either an antitrust or a consumer protection claim.  Amarin argues that these are "stand-alone" or "autonomous" unjust enrichment claims, that have been repeatedly dismissed by courts.  (Moving Br. at 50) (citing *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1175 (N.D. Cal. 2015); *Flonase*, 692 F. Supp. 2d at 542 n.13).  Notably, the court in *Lidoderm* dismissed the plaintiff's claims in Arkansas and Alabama

IPPs reject Amarin's position as an attempt to repackage its *Illinois Brick* arguments.  (Opp. at 51–52.)  Nevertheless, they cite authority in support of their assertion that Alabama and Arkansas recognize stand-alone claims for unjust enrichment.  (*Id*.)  On Reply, Amarin says that these cases are unclear at best.  (Reply at 25.)

Amarin's position is misguided.  As IPPs suggest, the courts in *Lidoderm* and *Flonase* may have both dismissed autonomous claims, but did so because the claims *could not be pled* under either state antitrust laws or state consumer protection laws, not because they had not been

pled.  *See* 103 F. Supp. 3d at 1175 ("I agree that to the extent [plaintiff] has been unable to assert a claim under a state's antitrust or consumer protection statute, plaintiff cannot assert an unjust enrichment claim unless it has support for that proposition from authority in that state. Without such support, I will not allow an autonomous claim for restitution to proceed."); *Flonase*, 692 F. Supp. 2d at 542 n.13 ("I therefore to decline to allow autonomous restitution where recovery under state antitrust and consumer protection statutes is specifically prohibited.")  Given that the authority cited by Amarin does not support the relief they seek, this portion of the Motion will be DENIED.[9] [10]

> c)        Direct Benefit Theory Does Not Bar Unjust Enrichment Claims

Finally, Amarin seeks dismissal of unjust enrichment claims in fifteen jurisdictions— Delaware, Florida, Georgia, Idaho, Kentucky, Maine, Michigan, New Jersey, New York, North Dakota, Oklahoma, Pennsylvania, Texas, Washington, Wisconsin—because the Consolidated Complaint fails to allege that IPPs conferred a direct benefit on Amarin as required under the state's respective statutes.  (Moving Br. at 51–55.)  IPPs dispute the general principal as well as its application under the law of the fifteen jurisdictions.

---

[9] Moreover, at least one district court has rejected the same argument from a defendant on the basis that the court had "not had occasion to determine whether recovery is strictly prohibited under the antitrust laws and consumer protection laws of Arkansas and Wyoming . . . because (i) the IPP did not allege antitrust or consumer protection claims in those states, and (ii) Defendants did not independently raise reasons why the IPP would be prohibited from recovering under the antitrust laws of Arkansas and Wyoming, beyond the fact that the IPP simply did not allege those claims in the first place."  *Sergeants Benevolent Assoc. Heath & Welfare Fund v. Actavis*, PLC, Civ. No. X, 2018 WL 7197233, at *58 (S.D.N.Y. Dec. 26, 2018) (interior quotations marks omitted).  That court ultimately concluded that dismissal under those circumstances would "fail to read Plaintiffs' complaint in the light most favorable to Plaintiffs and confuse Plaintiffs' right to recover and equitable remedy under a common law based upon principles of unjust enrichment with its [sic] right to recover a remedy at law for an alleged violation of a state's antitrust laws."  *Id.* (cleaned up).

[10] On the merits of whether Alabama state law permits indirect purchasers to pursue a claim for antitrust violations, the Court observed some positive authority from both the U.S. Supreme Court and the Seventh Circuit.  *See California v. ARC America Corp.*, 490 U.S. 93, 98 n.3 (1989) ("The statutes of Alabama . . . expressly allow indirect purchasers to sue.") (citing Ala. Code § 6–5–60(a)); *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F. 3d 599 (7th Cir. 1997).

The Consolidated Complaint alleges that Named Plaintiffs and the class members purchased, or reimbursed for, the purchase of Vascepa and its generic equivalent, and that Amarin was unjustly enriched by overcharges for these products.  (See, e.g., CC ¶¶ 305–10 re: Delaware.)  It also alleges that "Amarin's enrichment and the impoverishment of plaintiffs and the class are connected."  (CC ¶ 308.)  At this stage of the litigation, the Court rejects as premature Amarin's argument that the connection between the purchases and Amarin's enrichment are too tenuous because their position "raise[s] factual questions" and presumes that IPPs "can prove no set of facts allowing it to state a common law claim for unjust enrichment. See In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000); *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543–547 (D.N.J. 2004).  This portion of Amarin's Motion will therefore also be DENIED.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART the Motion to Dismiss (ECF No. 64).  The Court will GRANT the Motion insofar as it will:

DISMISS WITHOUT PREJUDICE the Consolidated Complaint's claim under the Tennessee Consumer Protection Act (within Count Six); and

DISMISS WITHOUT PREJUDICE the Consolidated Complaint's claims for unjust enrichment under the laws of Alaska, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, New Jersey, Oklahoma, Pennsylvania, South Carolina, Texas, Virginia, Washington, and Wyoming (within Count 7); and will

Otherwise DENY the Motion.  Indirect Purchaser Plaintiffs will be given leave to amend its Consolidated Complaint within 30 days.

Date: February 23, 2023

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**